IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

| | |
|---|---|
| NATIONAL FEDERATION OF INDEPENDENT BUSINESS; TEXAS ASSOCIATION OF BUSINESS; LUBBOCK CHAMBER OF COMMERCE; NATIONAL ASSOCIATION OF HOME BUILDERS; TEXAS ASSOCIATION OF BUILDERS, <br><br> Plaintiffs-Appellees, <br><br> STATE OF TEXAS; STATE OF ARKANSAS; STATE OF ALABAMA; STATE OF INDIANA; STATE OF MICHIGAN; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF UTAH; STATE OF WEST VIRGINIA; STATE OF WISCONSIN, <br><br> Intervenor Plaintiffs-Appellees, <br><br> v. <br><br> R. ALEXANDER ACOSTA, SECRETARY, U.S. DEPARTMENT OF LABOR; ANDREW D. AUERBACH, Acting Director, Office of Labor Management Standards, Department of Labor; UNITED STATES DEPARTMENT OF LABOR, <br><br> Defendants-Appellants. | No. 17-10054 |

**NOTICE OF FILING OF PROPOSED RULE**

## NOTICE OF FILING OF PROPOSED RULE

On June 2, 2017, the government moved to hold this appeal in abeyance on the ground that the Department of Labor had initiated a new rulemaking process and would shortly be issuing a notice of proposed rulemaking in which it would propose to rescind the rule at issue.  The notice of proposed rulemaking was made publicly available today and is scheduled to be published in the Federal Register on June 12, 2017.  *See* Federal Register, 6/8/2017 Public Inspection Issue.[1]  A copy of the Notice of Proposed Rulemaking is attached.  The public-comment period is scheduled to close on August 11, 2017.

---

[1] https://www.federalregister.gov/public-inspection/2017/06/08

Respectfully submitted,

HASHIM M. MOOPPAN
   *Deputy Assistant Attorney General*

JOHN R. PARKER
   *United States Attorney*

MICHAEL S. RAAB

 *s/ Daniel Tenny*
_____
DANIEL TENNY
SARAH CARROLL
(202) 514-1838
   *Attorneys, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Ave., N.W.*
   *Room 7215*
   *Washington, D.C.  20530*

JUNE 2017

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2017, I electronically filed the

foregoing with the Clerk of the Court by using the appellate CM/ECF

system.  Participants in the case are registered CM/ECF users and service

will be accomplished by the appellate CM/ECF system.

*s/ Daniel Tenny*
Daniel Tenny

This document is scheduled to be published in the
Federal Register on 06/12/2017 and available online at
**https://federalregister.gov/d/2017-11983**, and on **FDsys.gov**

**DEPARTMENT OF LABOR**

**Office of Labor-Management Standards**

**29 CFR Parts 405 and 406**

**RIN 1245–AA07**

**Rescission of Rule Interpreting "Advice" Exemption in Section 203(c) of the Labor-Management Reporting and Disclosure Act**

**AGENCY:** Office of Labor-Management Standards, Department of Labor.

**ACTION:**  Notice of proposed rulemaking; request for comments.

---

**SUMMARY:** This Notice of Proposed Rulemaking proposes to rescind the regulations established in the final rule titled "Interpretation of the 'Advice' Exemption in Section 203(c) of the Labor-Management Reporting and Disclosure Act," effective April 15, 2016.

DATES: Comments must be received on or before [INSERT DATE **60 DAYS AFTER DATE OF PUBLICATION IN THE FEDERAL REGISTER**].

ADDRESSES: You may submit comments, identified by RIN 1245-AA07, only by the following method:

Internet—Federal eRulemaking Portal. Electronic comments may be submitted through http://www.regulations.gov. To locate the proposed rule, use key words such as "Labor-Management Standards" or "Advice Exemption" to search documents accepting comments. Follow the instructions for submitting comments. Please be advised that comments received will

be posted without change to http://www.regulations.gov, including any personal information

provided. The Paperwork Reduction Act section of this preamble provides information about

additional comment opportunities for the associated information collection requirements.

FOR FURTHER INFORMATION CONTACT: Andrew Davis, Chief of the Division of

Interpretations and Standards, Office of Labor-Management Standards, U.S. Department of

Labor, 200 Constitution Avenue, NW., Room N-5609, Washington, DC 20210, (202) 693-0123

(this is not a toll-free number), (800) 877-8339 (TTY/TDD).

SUPPLEMENTARY INFORMATION:

I. Statutory Authority

The Department's statutory authority is set forth in sections 203 and 208 of the LMRDA, 29

U.S.C. 432, 438.  Section 208 of the LMRDA provides that the Secretary of Labor shall have

authority to issue, amend, and rescind rules and regulations prescribing the form and publication

of reports required to be filed under Title II of the Act and such other reasonable rules and

regulations as he may find necessary to prevent the circumvention or evasion of the reporting

requirements. 29 U.S.C. 438.  Section 203, discussed in more detail below, sets out the

substantive reporting obligations.

The Secretary has delegated his authority under the LMRDA to the Director of the Office of

Labor-Management Standards and permitted redelegation of such authority.  *See* Secretary's

Order 03–2012 (Oct. 19, 2012), published at 77 FR 69375 (Nov. 16, 2012).

## II. Background

### A. Introduction

The proposal to rescind the March 24, 2016 Rule is part of the Department's continuing effort to fairly effectuate the reporting requirements of the LMRDA. The LMRDA generally reflects obligations of unions and employers to conduct labor-management relations in a manner that protects the rights of employees to exercise their right to choose whether to be represented by a union for purposes of collective bargaining. The LMRDA's reporting provisions promote these rights by requiring unions, employers, and labor relations consultants to publicly disclose information about certain financial transactions, agreements, and arrangements. The Department believes that a fair and transparent government regulatory regime must consider and balance the interests of labor relations consultants, employers, labor organizations, their members, and the public. Any change to a labor relations consultant's recordkeeping, reporting and business practices must be based on a demonstrated and significant need for information, consideration of the burden associated with such reporting, and any increased costs associated with the change.

### B. The LMRDA's Reporting Requirements

In enacting the LMRDA in 1959, a bipartisan Congress sought to protect the rights and interests of employees, labor organizations and the public generally as they relate to the activities of labor organizations, employers, labor relations consultants, and their officers, employees, and representatives.

Section 203(a) of the LMRDA, 29 U.S.C. 433(a), requires employers to report to the Department of Labor "any agreement or arrangement with a labor relations consultant or other independent contractor or organization" under which such person "undertakes activities where an object thereof, directly or indirectly, is to persuade employees to exercise or not to exercise," or how to exercise, their rights to union representation and collective bargaining.  29 U.S.C. 433(a)(4).[1] "[A]ny payment (including reimbursed expenses)" pursuant to such an agreement or arrangement must also be reported. 29 U.S.C. 433(a)(5).  The report must be one "showing in detail the date and amount of each such payment, … agreement, or arrangement … and a full explanation of the circumstances of all such payments, including the terms of any agreement or understanding pursuant to which they were made."  This information must be submitted on the prescribed Form LM-10 ("Employer Report") within 90 days of the close of the employer's fiscal year.  29 U.S.C. 433(a); 29 CFR part 405.

LMRDA section 203(b) imposes a similar reporting requirement on labor relations consultants and other persons.  It provides, in part, that every person who enters into an agreement or arrangement with an employer and undertakes activities where an object thereof, directly or indirectly, is to persuade employees to exercise or not to exercise, or how to exercise, their rights to union representation and collective bargaining "shall file within thirty days after entering into such agreement or arrangement a report with the Secretary … containing … a detailed statement of the terms and conditions of such agreement or arrangement."  29 U.S.C. 433(b).  This information must be submitted on the prescribed Form LM–20 ("Agreement and Activities

---

[1] The LMRDA defines a "labor relations consultant" as "any person who, for compensation, advises or represents an employer, employer organization, or labor organization concerning employee organizing, concerted activities, or collective bargaining activities."  29 U.S.C. 402(m).

4

Report") within 30 days of entering into the reportable agreement or arrangement.  *See* 29 U.S.C. 433; 29 CFR part 406.

A third report is relevant here.  Section 203(b) further requires that every labor relations consultant or other person who engages in reportable activity must file an additional report in each fiscal year during which payments were made as a result of reportable agreements or arrangements.  The report must contain a statement (A) of the consultant's receipts of any kind from employers on account of labor relations advice or services, designating the sources thereof, and (B) of the consultant's disbursements of any kind, in connection with such services and the purposes thereof. This information must be submitted on the prescribed Form LM-21 ("Receipts and Disbursements Report") within 90 days of the close of the labor relations consultant's fiscal year.  *See* 29 U.S.C. 433(b); 29 CFR part 406.

Since at least 1963, the reporting requirements have required reporting by the prescribed forms Form LM-10, Form LM-20, and Form LM-21.  28 FR 14384, Dec. 27, 1963, *See* 29 CFR part 405, 406.

LMRDA section 203(c) ensures that sections 203(a) and 203(b) are not construed to require reporting "by reason of [the consultant] giving or agreeing to give advice."  Section 203(c), referred to as the "advice" exemption, provides in pertinent part that "nothing in this section shall be construed to require any employer or other person to file a report covering the services of such person by reason of his giving or agreeing to give advice to such employer." 29 U.S.C. 433(c).  Finally, LMRDA section 204 exempts from reporting attorney-client communications,

which are defined as "information which was lawfully communicated to [an] … attorney by any of his clients in the course of a legitimate attorney-client relationship."  29 U.S.C. 434.

III. Proposal to Rescind

The Department proposes to rescind the March 24, 2016 Rule.  81 FR 15924 (Mar. 25, 2016).  This action would not affect the disclosure requirements currently in effect.  The U.S. District Court for the Northern District of Texas issued a nationwide permanent injunction against enforcement of the Rule on November 16, 2016, which continued a preliminary injunction that had been entered on June 27, 2016.  *National Federation of Independent Business* v. *Perez* (N.D. Tex. 5:16-cv-00066-c).  Although the Rule technically went into effect, its implementation was enjoined before its application became mandatory, and no reports were filed or are due under it.  The Department has continued to enforce the longstanding and pre-existing interpretation of the advice exemption.

1. Administrative and Regulatory History

In 1960, one year after passage of the Act, the Department issued its initial interpretation (the "original interpretation") of Section 203(c)'s "advice" exemption.  This interpretation was reflected in a technical assistance publication for employers.  U.S. Dep't of Labor, Bureau of Labor-Management Reports,[2] *Technical Assistance Aid No. 4: Guide for Employer Reporting* (1960).  Under this original interpretation, the Department required employers to report any

---

[2] The Bureau of Labor-Management Reports was the predecessor agency to the Office of Labor-Management Standards.

"[a]rrangement with a 'labor relations consultant' or other third party to draft speeches or written material to be delivered or disseminated to employees for the purpose of persuading such employees as to their right to organize and bargain collectively." *Id.* at 18.  By contrast, employers were not required to report "[a]rrangements with a 'labor relations consultant,' or other third parties related exclusively to advice, representation before a court, administrative agency, or arbitration tribunal, or engaging in collective bargaining on [the employer's] behalf." *Id*.  Additionally, in opinion letters to members of the public, the Department stated that a lawyer's or consultant's revision of a document prepared by an employer constituted reportable activity.  *See* 76 FR 36178, 36180 (June 21, 2011) (NPRM) (*citing* Benjamin Naumoff, Reporting Requirements under the Labor-Management Reporting and Disclosure Act, in Fourteenth Annual Proceedings of the New York University Conference on Labor 129, 140–141 (1961)).

In 1962, the Department adopted a more limited view regarding the scope of disclosure under Section 203, construing the advice exemption of section 203(c) more broadly by excluding from reporting the provision of materials by a third party to an employer that the employer could "accept or reject."[3]  In later years, the Department reiterated this position—sometimes referred to as the "accept or reject" test—though sometimes expressing doubts regarding its soundness.  *See* Subcommittee on Labor-Management Relations, H. Comm. On Education and Labor*, The Forgotten Law: Disclosure of Consultant and Employer Activity Under the L.M.R.D.A.* (Comm.

---

[3] *See* 81 FR at 15936 (quoting the agency's 1962 LMRDA Interpretive Manual as stating: "In a situation where the employer is free to accept or reject the written material prepared for him and there is no indication that the middleman is operating under a deceptive arrangement with the employer, the fact that the middleman drafts the material in its entirety will not in itself generally be sufficient to require a report.") (emphasis omitted).

Print 1984) (statement of Richard Hunsucker, Director, Office of Labor-Management Standards

Enforcement, Labor-Management Standards Administration, U.S. Department of Labor);

Subcommittee on Labor-Management Relations, H. Comm. on Education and Labor, 4

*Pressures in Today's Workplace* 5 (Comm. Print 1980) (statement of William Hobgood,

Assistant Secretary of Labor for Labor-Management Relations). In 2001, the Department issued

a revised interpretation of Section 203(c), expanding the scope of reportable activities by

focusing on whether an activity has persuasion of employees as an object, rather than

categorically exempting activities in which a consultant has no direct contact with employees.

*See* 66 FR 2782 (Jan. 11, 2001).  However, later that year, that interpretation was rescinded, and

the Department returned to its prior view.  *See* 66 FR 18864 (Apr. 11, 2001).


On June 21, 2011, the Department issued a notice of proposed rulemaking to revise its

interpretation of section 203(c).  76 FR 36178.  Approximately 9,000 comments were received.

81 FR at 15945.  On March 24, 2016, the Department issued its final Rule, addressing the

comments it received.  *See* 81 FR at 15945-16000.


That Rule – the subject of this proposal – requires employers and their consultants to report not

only agreements or arrangements pursuant to which a consultant directly contacts employees, but

also where a consultant engages in activities "behind the scenes," where an object is to persuade

employees concerning their rights to organize and bargain collectively.  *Id.* at 15925.


The Rule construes the "advice" exemption more narrowly than the prior interpretation.  In

broadening the scope of reportable "persuader" conduct, the Department abandoned its position

that only direct communication between a consultant and employees triggered the reporting requirement, and that any other activity was exempt "advice."  The fact that the employer itself delivers the message or carries out the policy developed by a consultant would no longer exempt a consulting arrangement from reporting.  The stated purpose of this change was to "more closely reflect the employer and consultant reporting intended by Congress in enacting the LMRDA."  81 FR at 16001.  The Rule cited evidence that the use of outside consultants to contest union organizing efforts had proliferated, while the number of reports filed remained consistently small.  81 FR at 16001. The Department concluded that its previous "broad interpretation of the advice exemption ha[d] contributed to this underreporting."  *Id.*

Both the preamble to the Rule and the instructions on the relevant forms define "advice," which does not give rise to a reporting obligation, as "an oral or written recommendation regarding a decision or a course of conduct."  *Id.* at 15,939, 16,028 (LM-10 instructions), 16,044 (LM-20 instructions).  The Rule thus distinguishes between agreements to advise a client on a proposed course of conduct, e.g., warning an employer that a statement in an employer-drafted speech would constitute an unfair labor practice or identifying what other companies have done, which does not give rise to an obligation to report, and agreements to develop or direct that course of conduct via an activity that falls under one of five categories: direct contact with employees, or four categories of indirect activity (directing supervisor activity, providing material for employers to disseminate to employees, conducting tailored seminars on the issue of unionization, and developing or implementing personnel policies designed to encourage unionization).  81 FR at 15938.  This includes providing messaging on unionization, developing policies in order to dissuade employees as to the need for a union (such as a longer lunch break

or a more generous leave policy), drafting or revising written materials regarding unionization for dissemination to employees, planning "captive audience" meetings, or scripting interactions between supervisors and employees, which do give rise to a reporting obligation.

Reporting under the Rule is to be completed on the Form LM-10, which employers are required to file within 90 days of the end of their fiscal year, and the Form LM-20, which consultants are to file within 30 days of entering into a persuader agreement and the instructions to those forms include the 2016 interpretations. *See* 81 FR at 16022-16051. The LM-10 form is a four-page form; the LM-20 form is two pages. Much of the LM-10 form concerns employer activities not at issue here. The only materials required to be submitted along with either form are written agreements to engage in persuader activities, should they exist. Both forms include check boxes listing common types of reportable persuader activities.

2. Reasons for Rescission of the Rule

The Department proposes to rescind the Rule to provide the Department with an opportunity to give more consideration to several important effects of the Rule on the regulated parties. Rescission would ensure that any future changes to the Department's interpretation would reflect additional consideration of possible alternative interpretations of the statute, and could address the concerns that have been raised by reviewing courts. Rescission is further proposed because the burden of the Form LM-20 may have been substantially increased by the Form LM-21's requirements, and the Department considers it prudent to consider the effects of those requirements together. The Department will also consider the potential effects of the Rule on

attorneys and employers seeking legal assistance.  Rescission would also permit the Department to consider the impact of shifting priorities and resource constraints.

A.  The Department proposes to rescind the Rule to allow the Department to engage in further statutory analysis.

Courts analyzing the statutory reporting requirement, both before and after promulgation of the March 24, 2016 Rule, have expressed uncertainty about the interaction "between the coverage provisions of the LMRDA, and the Act's exemption for advice." *UAW v. Dole*, 869 F.2d 616, 618 (D.C. Cir. 1989).  Further, while some courts have viewed the statutory exemption in section 203(c) as making "explicit what was already implicit in § 203(b), to guard against misconstruction of § 203(b)," *see Wirtz v. Fowler*, 372 F.2d 315, 330 (5th Cir. 1966), other courts have taken a different view.  *See also Donovan v. Rose Law Firm*, 768 F.2d 964, 970 (8th Cir. 1985) ("we note initially that a reading of the language of §§ 203(b) and (c) does not plainly indicate which interpretation here advocated is to be preferred.").  Different courts of appeals have reached different conclusions on this question. Compare *Fowler*, 372 F.2d at 330 (adopting the former approach); *Donovan v. Master Printers Ass'n*, 532 F. Supp. 1140, 1145 (1981), adopted by *Master Printers Ass'n v. Donovan*, 699 F.2d 370 (same); *Douglas v. Wirtz*, 353 F.2d 30, 32 (4th Cir. 1965) (same); *Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211 (6th Cir. 1985) (same) with *Rose Law Firm*, 768 F.2d at 973 (adopting the latter approach).

Shortly after it was issued, the Rule was challenged in three district courts, and the challengers sought preliminary injunctive relief.  *Associated Builders & Contractors of Arkansas* v. *Perez*

(E.D. Ark. 4:16-cv-169); *Labnet Inc.* v. *United States Department of Labor* (D. Minn. 0:16-cv-00844); *National Federal of Independent Business* v. *Perez* (N.D. Tex. 5:16-cv-00066-c).  On June 22, 2016, the Minnesota court denied the challengers' request for preliminary relief, though the court expressed doubt about some potential applications of the rule.  197 F. Supp. 3d 1159 (D. Minn. 2016).  On June 27, 2016, the Texas court granted the challengers'[4] motion, adopting their proposed order, and issuing a nationwide injunction against implementation of the Persuader Rule.  *NFIB*, Slip Op. p.89-90; 2016 WL 3766121 (hereafter "NFIB PI Order").  The preliminary injunction was made permanent by order of November 16, 2016.  2016 WL 8193279.  The matter before the Arkansas court has been stayed, and the court has not issued any substantive rulings.  *See Associated Builders & Contractors* Dkt. No. 80 (Dec. 13, 2016).

The court's decision in *NFIB* was premised in significant part on its conclusion that the "advice" exception could be meaningful only if there were some activities that had an object to persuade but were nonetheless exempt as advice.  The District of Minnesota court, though rejecting a facial challenge to the rule, also expressed concern that the Rule was problematic in some applications because of "its insistence that persuader activity and advice are mutually exclusive categories."  *Labnet, Inc.*, 197 F. Supp. 3d at 1168.

In the preamble to the 2016 Rule, the Department listed activities that it considered not to be reportable.  *See* 81 FR 15939.  These activities consisted of situations where a consultant: (1) provides legal advice or other legal services (such as representing an employer in court or during

---

[4]  The plaintiffs are a number of national, state, and local trade associations. Subsequently, on March 20, 2016, the states of Texas, Arkansas, Alabama, Indiana, Michigan, Oklahoma, South Carolina, Utah, West Virginia, and Wisconsin intervened.

collective bargaining) (*id.* at 15949); (2) offers a persuader-services sales pitch (*id.* at 15978); (3) conducts a vulnerability assessment or a survey (other than a push survey, i.e. one designed to influence participants and thus undertaken with an object to persuade) (*id.*); (4) revises materials, if the revisions are to ensure legality, clarity or grammatical correctness, not to increase the persuasiveness (*id.* at 15938); (5) develops or implements personnel policies or actions that improve employee pay, benefits, or working conditions, without any object to persuade employees (*id.* at 15938 n. 26); (6) provides "off-the-shelf" materials to the employer (*id.* at 15938); or (7) conducts a seminar without developing or assisting the employer in developing tactics or strategies on the unionization (*id.* at 15938-39).

In setting forth this list, the Rule left unclear whether the activities were exempt as advice, were simply not persuader activities, or both.  An activity may fall outside the compass of a statute or it may satisfy an exemption under the statute.  Either way, no report is due.  But further analysis of the reasons that activities are not reportable would provide further clarity to regulated entities and reviewing courts as they consider other circumstances in which reporting might or might not be required.  The Department proposes rescinding the rule so that, if it elects to change the scope of reportable activity beyond what has been in place since 1962, it can provide as thorough an explanation of its statutory interpretation as possible.

B.  The Department also proposes to rescind the Rule to allow the Department to consider the interaction between Form LM-20 and Form LM-21.

The obligation to file the Form LM-20 and the Form LM-21 result from the same event: persuader activity.

Section 203(b) sets forth the statutory basis for the Form LM-21. That section requires every person who engages in persuader activities to file annually a report with the Secretary containing a statement of the person's "receipts of any kind from employers on account of labor relations advice or services, designating the sources thereof,'' and a statement of its disbursements of any kind, in connection with those services and their purposes. *See also* 29 CFR 406.3 (Form LM-21 requirements). 57 FR 15929. Thus, by statute the requirement to file a Form LM-20 invariably necessitates the obligation to file a Form LM-21, so long as any disbursement is made pursuant to the reportable persuader agreement or arrangement.

Accordingly, an increase in the range and number of activities that constitute "persuader activity" will increase both the number of Form LM-20 filers and Form LM-21 filers. Each form imposes a unique recordkeeping and reporting burden on the filer. For example, a law firm that contracts with an employer and engages in persuader activity under the Rule will have to file a Form LM-20 disclosing the arrangement with the employer, among other information. The consultant/law firm would also have to file a Form LM-21 on which it reported receipts from all employers in connection with labor relations advice or services regardless of the purpose of the advice or service. It would also report in the aggregate the total amount of the disbursements made from such receipts, with a breakdown by office and administrative expenses, publicity, fees for professional service, loans, and other disbursement categories. The filer would also itemize each persuader-related disbursement, the recipient of the disbursement, and the purpose of the

disbursement.  Its disbursements to officers and employees would be disclosed when made in connection with labor relations advice or services.

The 2016 Rule made some labor relations consultants and employers who had previously not been required to file under the LMRDA responsible for filing under the LMRDA – both forms LM-20 *and* LM-21.  The Department recognized and considered the effect of the burden arising from the Form LM-20.  But it chose to defer consideration of Form LM-21 issues to a separate rulemaking—one that concerned only the Form LM-21.

Deferral of consideration of Form LM-21 issues was motivated, in part, by the Department's intention to engage in parallel rulemaking for reform of the scope and detail of the Form LM-21. 57 FR 15992, fn 88.  The Department also issued a separate special enforcement policy that addressed the potential that new filers might have unique difficulties in filing the Form LM-21. https://www.dol.gov/olms/regs/compliance/ecr/lm21_specialenforce.htm  Under that special enforcement policy, the filers of Form LM-20 who must also file a Form LM-21 are not required to complete two parts of the LM-21.

As of the date of this NPRM, due to shifting priorities and resource constraints, no proposal has been issued regarding Form LM-21.  Although the enforcement policy addressed the immediate effects of the Rule at issue here on Form LM-21 filers, delays in a more plenary consideration of those issues weigh in favor of rescinding the Rule so that the consequences for both forms could be considered together in any future rulemaking, should the Department elect to change the reporting requirement.

C.  The Department proposes to rescind the Rule to allow more detailed consideration of attorneys' activities.

Regulated entities have expressed concerns about the interaction between the new categories of "indirect" persuasion that were created by the rule and the role of attorneys in advising their clients.  The new categories of "indirect" persuasion include:

- Drafting, revising, or providing written materials for presentation, dissemination, or distribution to employees;
- Drafting, revising, or providing a speech for presentation to employees;
- Drafting, revising, or providing audiovisual or multi-media presentations for presentation, dissemination, or distribution to employees;
- Drafting, revising or providing website content for employees;
- Training supervisors or employer representatives to conduct individual or group employee meetings;
- Coordinating or directing the activities of supervisors or employer representatives;
- Developing employer personnel policies or practices;
- Conducting a seminar for supervisors or employer representatives; etc.

81 FR 16051.  Although the Department gave some general consideration to concerns that the Rule would have a "chilling effect" on clients' abilities to obtain representation by attorneys, 81 FR 15999, the Department believes that the implementation of any changed reporting

requirement in this area should include a more detailed and specific analysis of how each of these activities would, as a practical and factual matter, affect the behavior of the regulated community, with regard to furnishing and receiving legal services.

D.  The Department proposes to rescind the Rule in light of limited resources and competing priorities.

In rejecting a challenge to the Department's prior interpretation—that a consultant incurs a reporting obligation only when it directly communicates with employees with an object to persuade them—the U.S. Court of Appeals for the D.C. Circuit relied expressly on the Department's "right to shape [its] enforcement policy to the realities of limited resources and competing priorities."  *International Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Dole*, 869 F.2d 616, 620 (D.C. Cir. 1989).  The Department's resource constraints weigh in favor of rescinding the Rule.  Under the prior interpretation, there are significantly fewer reports, which reduces the investigative resources devoted to enforcing the rules on filing timely and complete reports.  Further, under the prior interpretation, those case investigations generally involve obtaining and reviewing the written agreement and interviewing employees only.  In contrast, enforcement of the Rule would likely involve a lengthier and more complicated investigation, examining in more detail the actions of consultants and their interaction with the employers' supervisors and other representatives.  The investigator would be required to review both the direct reporting category and the four indirect persuader categories. This is a more resource-intensive process, and the Department wishes to consider whether there are more productive uses for its limited resources.

3. Effect of Rescission

If the Rule is rescinded, as proposed here, the reporting requirements in effect would be the requirements as they existed before the Rule.  The Forms and Instructions, available on the Department's website, will be those pre-existing the Rule.  These are also the Forms and Instructions currently being used by filers, in light of the litigation and court order discussed in section 2(A), above.  *See National Federal of Independent Business* v. *Perez* (N.D. Tex. 5:l6-cv-00066-c), Slip Op. p.89-90; 2016 WL 3766121; 2016 WL 8193279.

Executive Order 12866

Executive Orders 13563 and 12866 direct agencies to assess all costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety effects, distributive impacts, and equity). Executive Order 13563 emphasizes the importance of quantifying both costs and benefits, of reducing costs, of harmonizing rules, and of promoting flexibility. This rule has been designated a "significant regulatory action" although not economically significant, under section 3(f) of Executive Order 12866. Accordingly, the rule has been reviewed by the Office of Management and Budget (OMB).

The 2016 Final Rule was enjoined before it became applicable, so if the impacts of this NPRM are assessed relative to current practice, the results would be negligible.  If, on the other hand,

the NPRM's effects are assessed relative to a baseline in which regulated entities comply with the 2016 Final Rule, the rescission would result in annual cost savings of $1,198,714.50.

Specifically, in the most recent Information Collection Request (ICR) for the pre-2016 Form LM-20, the Department estimated 387 Form LM-20 reports would be filed annually. 81 FR 15929, 16009. This estimate was raised to 4,194 reports for the 2016 Rule, with a total annual cost of $633,932.16. 81 FR 16015 (Table 5). The Department returns to the 387 figure, which is $13,130 in total annual costs, as estimated in the accompanying ICR submission to OIRA. The total annual cost savings relating the rescission of the Form LM-20 is therefore $620,802.16 ($633,932.16 - $13,130 = $620,802.16).

In the most recent ICR for the pre-2016 Form LM-10, the Department estimated 957 Form LM-10 reports would be filed annually. 81 FR 15929. This estimate was raised to 2,777 reports for the 2016 Rule, with a total annual cost of $629,567.34. 81 FR 16015 (Table 5). The Department returns to the 957 figure, which is $51,655 as estimated in the accompanying ICR submission to OIRA. The total annual cost savings relating the rescission of the Form LM-10 is $577,912.34 ($629,567.34 - $51,655 = $577,912.34)

Thus, the total savings from rescission of Form LM-10 and Form LM-20 is $1,198,714.50 ($620,802.16 + $577,912.34 = $1,198,714.50 ). Additionally, the Department returns to its previous estimate of 22 minutes of reporting and recordkeeping burden per Form LM-20 form, as opposed to the 98 minutes in the 2016 Rule. See 81 FR 15929, 16014, and 16015, Table 5. The Department returns to its previous estimate of 35 minutes for reporting and recordkeeping

burden per Form LM-10 form, as opposed to the 147 minutes in the 2016 Rule.  See 81 FR

15929 and 16015, Table 5.  Finally, the Department downward adjusts the number of Form LM-

21 reports from 258, as estimated under the 2016 Rule, to the pre-2016 level of 72.  We note that

the analysis of the 2016 final rule, which is the source of these estimates, did not include an

overhead labor cost.  There are several approaches to look at the cost elements that fit the

definition of overhead and there are a range of overhead estimates—from 17 percent by the

Environmental Protection Agency to an average of 77 percent by government contractors.

The 2016 Rule described qualitative benefits arising from the rule, stating that it "promotes the

important interests of the Government and the public by ensuring that employees will be better

informed and thus better able to exercise their rights."  57 FR 15929.  These benefits were not

quantified.  As described above, the Department proposes to rescind the Rule to provide the

Department with an opportunity to give more consideration to several important effects of

modifying the scope of reporting on regulated parties.  This consideration will include both

benefits and burdens.

Executive Order 13771: Reducing Regulation and Controlling Regulatory Costs

Consistent with Executive Order 13771 (82 FR 9339, February 3, 2017), and as explained above

in the Executive Order 12866 section, we have estimated the costs for this proposed rule to result

in an annual savings of $1,198,714.50 In the most recent Information Collection Request (ICR)

for the pre-2016 Form LM-20, the Department estimated 387 Form LM-20 reports would be

filed annually.  This estimate was raised to 4,194 reports for the 2016 Rule.  The Department

returns to the 387 figure.  Additionally, the Department returns to its previous estimate of 22 minutes of reporting and recordkeeping burden per Form LM-20 form, as opposed to the 98 minutes in the 2016 rule.  See 81 FR 15929, 16014, and 16015, Table 5.

In its most recent ICR for the pre-2016 Form LM-10, the Department estimated 957 Form LM-10 reports.  Thus, the Department adjusts to 957 the Form LM-10 estimate of 2,777 reports set forth in the 2016 Rule.  Additionally, the Department returns to its previous estimate of 35 minutes for reporting and recordkeeping burden per Form LM-10 form, as opposed to the 147 minutes in the 2016 Rule.  See 81 FR 15929 and 16015, Table 5.  Finally, the Department downward adjusts the number of Form LM-21 reports from 258, as estimated under the 2016 Rule, to the pre-2016 level of 72.  Therefore, this action is expected to be an Executive Order 13771 deregulatory action.

Regulatory Flexibility Act

The Regulatory Flexibility Act of 1980, 5 U.S.C. 601 *et seq*., requires agencies to prepare regulatory flexibility analyses, and to develop alternatives wherever possible, in drafting regulations that will have a significant impact on a substantial number of small entities. The Department does not believe that this proposed rule will have a significant economic impact on a substantial number of small entities, as the rule contains no collection of information and relieves the additional burden imposed upon employers and labor relations consultants through the rescission of the regulations published on Mar. 24, 2016.  *See* 81 FR 15924.  Therefore, a regulatory flexibility analysis under the Regulatory Flexibility Act is not required.  The Secretary

has certified this conclusion to the Chief Counsel for Advocacy of the Small Business

Administration.

Unfunded Mandates Reform

This proposed rule will not include any Federal mandate that may result in increased

expenditures by State, local, and tribal governments, in the aggregate, of $100 million or more,

or in increased expenditures by the private sector of $100 million or more.

Paperwork Reduction Act

The Paperwork Reduction Act of 1995 (PRA), 44 U.S.C. 3501 *et seq*., provides that no person is

required to respond to a collection of information unless it displays a valid OMB control number.

In order to obtain PRA approval, a Federal agency must engage in a number of steps, including

estimating the burden the collection places on the public and seeking public input on the

proposed information collection.

This proposed rule contains no new information collection requirements for purposes of the

Paperwork Reduction Act of 1995 (PRA) (44 U.S.C. 3501 *et seq*.).  The Department notes that,

consistent with the previously mentioned injunction, the agency already amended the

information collection approval for Forms LM-10 and LM-20 and their instructions to reapply

the pre-2016 versions. When issuing its approval, the OMB issued clearance terms providing the

previously approved versions of these forms will remain effect until further notice. See ICR

Reference Number 201604-1245-001.

As the proposed rule still contains an information collection, the Department is submitting,

contemporaneous with the publication of this notice, an information collection request (ICR) to

revise the PRA clearance to address the clearance term.  A copy of this ICR, with applicable

supporting documentation, including among other things a description of the likely respondents,

proposed frequency of response, and estimated total burden may be obtained free of charge from

the RegInfo.gov Web site at http://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=201705-

1245-001 (this link will only become active on the day following publication of this notice) or

from the Department by contacting Andrew Davis on 202-693-0123 (this is not a toll-free

number) / email: OLMS-Public@dol.gov.

In addition to submitting comments on the information collections contained in this proposed

rule or otherwise covered by the ICR directly to the Department, as discussed in the addresses

portion of this preamble, written views about the request may also be submitted directly by mail

to the Office of Information and Regulatory Affairs, Attn: OMB Desk Officer for DOL-OLMS,

Office of Management and Budget, Room 10235, 725 17th Street, N.W., Washington, DC

20503; by Fax: 202-395-6881 (this is not a toll-free number); or by email:

OIRA_submission@omb.eop.gov. Please note that comments submitted in response to this

notice will be made a matter of public record and may be posted into the docket without

redaction. The Department strongly encourages commenters not to include sensitive information

such social security numbers or confidential business information in any comment.

The Department and OMB are particularly interested in comments that:

- Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

- Evaluate the accuracy of the agency's estimate of the burden of the collection of information, including the validity of the methodology and assumptions used;

- Enhance the quality, utility, and clarity of the information to be collected; and

- Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, *e.g.*, by permitting electronic submission of responses.

**Type of Review:** Revision of a currently approved collection.

**Agency:** Office of Labor-Management Standards.

**Title:** Labor Organization and Auxiliary Reports.

**OMB Number:** 1245-0003.

**Affected Public:** Private Sector—businesses or other for-profits and not-for-profit institutions.

**Number of Annual Responses:** 31,501

**Frequency of Response:** Varies.

**Estimated Total Annual Burden Hours:** 4,580,114.45.

**Estimated Total Annual Other Burden Cost:** $0.

Small Business Regulatory Enforcement Fairness Act of 1996

This proposed rule is not a major rule as defined by section 804 of the Small Business Regulatory Enforcement Fairness Act of 1996. This rule will not result in an annual effect on the economy of $100,000,000 or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of the United States-based companies to compete with foreign-based companies in domestic and export markets.

List of Subjects in 29 CFR Parts 405 and 406

Employers and labor relations consultants, Reporting and recordkeeping requirements.

Accordingly, for the reasons stated herein, the Secretary proposes to amend parts 405 and 406 of title 29, chapter IV of the Code of Federal Regulations to read as the text at 29 CFR parts 405 and 406 (2015).

Signed in Washington, DC, this 5th day of June, 2017.

Andrew Auerbach,

Deputy Director, Office of Labor-Management Standards.

**BILLING CODE 4510-CP-P**

[FR Doc. 2017-11983 Filed: 6/8/2017 4:15 pm; Publication Date:  6/12/2017]